## MEMPHIS CITY BANK *v.* SMITH.

### (*Jackson.* May 13, 1899.)

1. MORTGAGES AND DEEDS OF TRUST. *Application of proceeds.*

    Under a trust deed that directs application of the proceeds of the trust property (1) to expenses, (2) to debts due bank A as its president may direct, (3) to debts due bank B as its president may direct, and further provides that the trust is created for "the exclusive protection and indemnity of said banks against loss on account of indebtedness" to them of the maker of said trust deed, and further authorizes said banks to exhaust all personal and collateral securities held by them, respectively, before making application of the proceeds of the trust—under such deed the president of bank A, although he is likewise the president of bank B, and the two institutions are owned and operated by the same parties, has no authority to divert any part of the proceeds of the trust to payment of debts due bank B until all debts of bank A are fully paid, at least so far as sureties thereon are concerned. (*Post, pp. 468–472.*)

2. SAME. *Same.*

    Nor, under such trust deed, has the president of said banks, or the president of either of them, any authority to divert a collateral owned jointly by the maker of the deed and another, and deposited to secure their joint note, to the payment of an unsecured debt of the maker of the deed. (*Post, p. 472.*)

3. USURY. *Allowed under answer.*

    Under his answer to a bill seeking to recover a note against him, a surety may have reference to ascertain any credit for usury paid by his principal upon the notes sued on and upon notes out of which they originated as renewals. (*Post, pp. 472, 473.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. LEE THORNTON, Ch.

SCRUGGS & HENDERSON for Bank.

H. F. DIX and TURLEY & WRIGHT for Smith.

WILKES, J. This is a bill to collect from W. J. Smith as indorser upon five notes executed by L. B. Eaton. His liability, so far as presented by the answer in this controversy, turns principally upon the provisions of certain trust deeds made to secure these as well as other notes, and especially a trust deed made to R. A. Parker on June 6, 1894, by Eaton, the maker of the notes. This trust deed confirmed three other trust deeds made to James and J. T. Frost, and provided for debts due the City Bank, as well as others due the Security Bank. The instrument provides that if the indebtedness secured by it is not paid, the property shall be sold and proceeds applied first to expenses, and second to the indebtedness due the Memphis City Bank as the acting president of that bank may direct, and third to the payment of debts due the Security Bank as its acting president may direct, and the balance to Eaton.

Then follows this statement: "The trust herein provided is for the exclusive protection and indemnity of the Memphis City Bank and Security Bank of Memphis against loss on account of the indebtedness of Eaton to them, and said banks may exhaust all security, personal or collateral, to their several debts before applying the proceeds of this trust to the debts secured, and may make application in such

manner to be directed by the presidents of said banks as to save said banks harmless against loss after exhausting all security, personal or collateral, specifically pledged as security for the several debts."

Some $16,000 was realized from a sale under this deed of trust, and was applied by the trustee after paying expenses, to certain specific debts due the City Bank, and then to debts due the Security Bank.

The defense set up by Smith in his answer is that the proceeds of the trust property, under the trust deed of June 6, 1894, should have been applied exclusively to debts owing the City Bank before any of it was diverted and paid to the Security Bank, since to that extent such application would have inured to his benefit and exoneration, and also that the proceeds of certain abstract stock being joint property of himself and Eaton, should have been applied to their joint obligation, and that such is the plain construction of both the trust deed upon the lands and the collateral note pledging the abstract stock.

The Chancellor held with this contention, and directed the proceeds of the trust property to be applied wholly to the City Bank, but in such a way as to protect it from loss, and to that end directed the unsecured debts and liabilities held by that bank on Eaton to be first paid. The Chancellor also held that the City Bank had misapplied one-half of the proceeds of the abstract stock to debts of Eaton not indorsed by Smith, and, so far as this applica-

tion was made, it was to be treated as void and held for nothing, and the debts thus paid were to be treated as still subsisting, and the proceeds of this abstract stock to be applied to the debts, on which Eaton and Smith were both liable. A reference was had as to this, and also as to usury paid by Eaton to the bank. From this decree the Memphis City Bank appealed and has assigned errors.

It is insisted that the Chancellor erred in holding that the proceeds of the trust should be applied to the payment of debts due by L. B. Eaton to the Memphis Bank until they were satisfied, before anything could be paid to the Security Bank; that it was error to order a reference as to usury, and that it was error to hold that the half proceeds of the abstract company stock should be applied to debts on which Eaton and Smith were both bound, to the exclusion of the debts on which Eaton alone was bound.

The first assignment, put in a little different form, is that the City Bank has the right to waive its preference to be paid out of this trust fund, in favor of the Security Bank, and look to Smith, the indorser, for the payment of its debts, the effect of which will be to deprive Smith of any benefit of these trust funds. On the other hand, it is insisted that while the City Bank had a right to apply the trust funds to any debt it holds against Eaton, secured or unsecured, as its President might direct, and so as to protect it from loss, still it could not

waive its right to the fund in favor of the Security Bank.

The contention, narrowed down, is that the City Bank could apply the proceeds to the unsecured debts of Eaton held by it, in preference to those secured by Smith, but it could go no further, and could not permit the Security Bank to take the fund and leave the City Bank to rely upon Smith's indorsement. And that to allow the fund to be thus diverted, would be to indirectly give the Security Bank the benefit of Smith's indorsements to the City Bank, inasmuch as it would appropriate funds which otherwise would go to the relief of Smith or his indorsements, to debts in the Security Bank on which he is not bound.

We are of opinion the decree of the Chancellor is correct. The proper construction of the deed of trust of June 6, 1894, is that the debts due the City Bank of Memphis are to be paid before those to the Security Bank. The option given to the acting president to apply the proceeds of the trust property as he may direct, means that he may apply it, at his discretion, between the secured and unsecured debts held by the City Bank, and not that he may divert it to the Security Bank, leaving debts due the City Bank unpaid; and the fact that he is president or acting president of both banks and the banks are virtually owned and operated by the same parties, does not matter. The two banks and the debts owing to them are to be treated as separate

and independent, and each standing upon its own rights, and the trust deed does not mean that they may be treated together as a common creditor and the proceeds applied between the debts held by both as though they were all held by one creditor.

The clear provision is that the debts due the Security Bank stand in a third class, and are to be paid only after those due the City Bank, which stand in a second class and have preference over those of the Security Bank, but, as between themselves, may be paid as the acting president may direct.

In like manner, the abstract company stock was pledged to secure debts on which both Eaton and Smith were bound upon the collateral note, which set forth the terms of the pledge, and the proceeds should have been so applied, as there was no discretion given the president of the bank as to this fund, and the property pledged was the joint property of the two. The Security Bank is not a party to this suit. It was made such party on motion, but subsequently this order was vacated and set aside, and the decrees in this case are made without regard to it.

The Chancellor, in his decree, held that Smith, under his answer, was entitled to a reference, to ascertain the usury exacted of Eaton upon the notes upon which he was indorser, and any renewals of the same, but not for any usury exacted on transactions outside of these notes, or notes out of which they originated as renewals, and his order of refer-

Memphis City Bank *v.* Smith.

ence was framed upon this idea and basis. A cross bill filed by Smith was accordingly dismissed, inasmuch as its object was to impound usury collected from Eaton on transactions other than those in which Smith was indorser, and from this there is no appeal, but upon Smith's answer the reference was made, as before stated, as to usury paid on debts on which he was bound.

It is said this reference as to usury was error, but no reason or ground is assigned why it should be treated as error.

We are of opinion that all of the matters of defense in this case would have been more properly set up by cross bill, but no exception is taken in this Court or the Court below upon this ground, and the defendant is clearly entitled, on the merits, to the reference for usury and to a proper application of the proceeds of the trust property, in order, so far as possible, to relieve him of his liabilities, and the decree of the Chancellor reaches the merits, and it is affirmed and the cause remanded for further proceedings. Appellant will pay cost of appeal.